UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

WILLIAM EARL LOZANO,

        Plaintiff,

v.

MICHAEL LAURITZEN,
JONATHAN W. PEDERSEN,

        Defendants.

CASE NO. 3:19-CV-6197-BHS-DWC

REPORT AND RECOMMENDATION

Noting Date: May 21, 2021

    The District Court has referred this action, filed pursuant to 42 U.S.C. § 1983, to United States Magistrate Judge David W. Christel. Plaintiff proceeding *pro se* and *in forma pauperis*, initiated this civil rights action on December 12, 2019. Dkt. 1, 4. Presently pending before the Court is Defendants' Motion for Summary Judgment ("Motion"). Dkt. 18.

    The Court concludes Plaintiff failed to sufficiently rebut Defendants' summary judgment showing regarding his Fourteenth Amendment claim. Accordingly, the Court recommends the Motion be granted.

## BACKGROUND

Plaintiff, who is not currently incarcerated, alleges he was denied the benefit of his earned early release credits when Defendants failed to release him on his earned early release date. *See* Dkt. 4. Plaintiff alleges Defendants failed to hold a hearing in violation of his Fourteenth Amendments rights. *Id*. Plaintiff names his Community Corrections Officer, Michael Lauritzen and his prison counselor, Jonathan Pedersen, as Defendants. Dkt. 4.

Defendants filed the Motion on November 2, 2020. Dkt. 18.[1] In support of the Motion, Defendants submitted the declarations of non-parties Kevin G. Bowen, Yvonne Brumfield, Stacey Halvarson, Chad R. Hostetler, Joiann K. Miller, Victoria Oller, and Dianna Rule; defense counsel Michelle Young; Defendant Michael Lauritzen; portions of Plaintiff's prison records, and portions of Plaintiff's judgments and sentences from his criminal proceedings. Dkt. 18-27. Plaintiff filed a Response to the Motion on March 29, 2021. Dkt. 33. Plaintiff did not submit any evidence with his Response; however, Plaintiff's Complaint was signed under penalty of perjury and is being considered as evidence. *See* Dkt. 4.[2] Defendants filed a Reply. Dkt. 34.

## STANDARD OF REVIEW

---

it[1] The Motion was sent to Plaintiff at an address different from the address Plaintiff provided to the Court. *See* Dkt. 18, 30. As it was not clear whether Plaintiff receive notice of the Motion, Plaintiff was directed to update his address and the Clerk's Office mailed a copy of the Motion to Plaintiff's current address. Dkt. 18, 30. Plaintiff requested an extension of time to respond to the Motion, which was granted, and the Motion became ready for consideration on April 9, 2021. Dkt. 18, 30, 31, 32.

[2] Because Plaintiff is *pro se*, the Court "must consider as evidence in his opposition to summary judgment all of [Plaintiff's] contentions offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where [Plaintiff] attested under penalty of perjury that the contents of the motions or pleadings are true and correct." *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A party asserting a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). All facts and reasonable inferences drawn therefrom must be viewed in the light most favorable to the nonmoving party. *Furnace v. Sullivan*, 705 F.3d 1021, 1026 (9th Cir. 2013) (*citing Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011); *Tarin v. County of Los Angeles*, 123 F.3d 1259, 1263 (9th Cir.1997).

As the party moving for summary judgment, Defendants have the initial burden to demonstrate no genuine issue of material fact remains in this case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *In re Oracle Corp. Securities Litigation*, 627 F.3d 376, 387 (9th Cir. 2010). The movant "always bears the initial responsibility of informing the district court of the basis for its motion," and identifying those portions of the record, including pleadings, discovery materials, and affidavits, "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Mere disagreement or the bald assertion stating a genuine issue of material fact exists does not preclude summary judgment. *California Architectural Building Products, Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987). A "material" fact is one which is "relevant to an element of a claim or defense and whose existence might affect the outcome of the suit," and the materiality of which is

"determined by the substantive law governing the claim." *T.W. Electrical Serv., Inc. v. Pacific Electrical Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

Mere "[d]isputes over irrelevant or unnecessary facts," therefore, "will not preclude a grant of summary judgment." *Id.* Rather, the nonmoving party "must produce at least some 'significant probative evidence tending to support the complaint.'" *Id.* (*quoting Anderson*, 477 U.S. at 290); *see also California Architectural Building Products, Inc.*, 818 F.2d at 1468 ("No longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment."). In other words, the purpose of summary judgment "is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it[.]" Fed R. Civ. P. 56(e)(3).

**EVIDENCE**

The facts are largely undisputed by the parties. *See* Dkt. 4, 18-27.

In April 2016, after pleading guilty to First-Degree Theft, Plaintiff was permitted to participate in a Drug Offender Sentencing Alternative ("DOSA"). Dkt. 20, *Decl. of Yvonne Brumfield*, 4. *See also* Wash. Rev. Code § 9.94A.662. A DOSA allows an offender who meets specific criteria to spend one half of his sentence incarcerated and one half of his sentence supervised in the community. Wash. Rev. Code § 9.94A.662(1)(a)-(b). Plaintiff was sentenced to 19 months of confinement (prison time) and 19 months of community custody (supervision). Dkt. 20, *Brumfield Decl.*, 9-10.

1    In October 2016, Plaintiff was approved for work release and he was transferred to the
2 Reynolds Work Release Facility. Dkt. 27, *Young Decl.*, 13. A few months later, Plaintiff escaped
3 from the work release facility and a warrant was issued for his arrest. Dkt. 23, *Decl. Defendant*
4 *Lauritzen*, 5, 7-9; Dkt. 27, *Young Decl.*, 13.

5    After 102 days at large, Plaintiff was apprehended and returned to custody. Dkt. 23,
6 *Lauritzen Decl.*, 2; Dkt. 27, *Young Decl.*, 13. He was charged with violating Wash. Admin. Code
7 § 137.25.030 (550) Escape and (812) Failing to Report/Turn In All Earnings. Dkt. 23, *Lauritzen*
8 *Decl.*, 2, 11. A disciplinary hearing was held May 30, 2017. Dkt. 23, *Lauritzen Decl.*, 2, 14-15.
9 Plaintiff attended the hearing and pleaded guilty to both charges. Dkt. 23, *Lauritzen Decl.*, 2, 14-
10 15. At the disciplinary hearing, the hearing officer and Defendant Lauritzen discussed whether
11 Plaintiff's DOSA must be revoked and determined that because Plaintiff had not yet started his
12 chemical dependency treatment program, DOSA revocation was not required. Dkt. 23, *Lauritzen*
13 *Decl.*, 6-7, Attachment D and E. Plaintiff was terminated from the work release program and
14 returned to prison at Washington Corrections Center ("WCC") in June 2017. Dkt. 23, *Lauritzen*
15 *Decl.*, 2, 15, 17, 19; Dkt. 27, *Young Decl.*, 13.

16    On July 20, 2017, the DOC audited Plaintiff's DOSA compliance.[3] Dkt. 24, *Decl. of*
17 *Joiann Miller*, 2-5. The DOC's Substance Abuse Recovery Unit found Plaintiff was not enrolled
18 in treatment because he was out of prison for court proceedings. Dkt. 25, *Miller Decl.,* 2-5
19 (Plaintiff was transferred to Cowlitz County to stand trial on additional crimes he committed
20 while at large). Plaintiff returned to WCC on September 8, 2017. Dkt. 27, *Young Decl.*, 13.

---

[3] During the time Plaintiff was at large, he committed additional crimes. Dkt. 27, *Young Decl.*, 13; Dkt. 25, *Decl. of Victoria Oller*, 4-17. Therefore, three weeks after he returned to WCC, he was transferred to Cowlitz County to stand trial on the new charges. While Plaintiff was in Cowlitz County, the DOC conducted the audit of his DOSA compliance. Dkt. 24, *Decl. of Joiann Miller*, 2-5.

1    Plaintiff's earned early release date was a few weeks later, September 29, 2017. Dkt. 21,
2    *Halvarson Decl.*, 2, 8.

3    However, Plaintiff could not be released unless he had an approved housing plan. Wash.
4    Rev Code § 9.94A.729(5)(b) & (c). Plaintiff was offered housing vouchers which help pay rent
5    on DOC approved housing, but he initially rejected them and indicated his family would find
6    housing for him. Dkt. 22, *Decl. of Chad Hostetler*, 4. However, his family was either unwilling
7    or unable to secure housing for Plaintiff because Plaintiff eventually applied for housing
8    vouchers. Dkt. 22, *Hostetler Decl.,* 4; Dkt. 26, *Decl. of Dianna Rule*, 5-6. Plaintiff's request was
9    denied because of his escape history and the funds available to him. Dkt. 26, *Rule Decl.*, 5-6.
10   Plaintiff was ultimately unable to arrange appropriate housing. Dkt. 19, *Bowen Decl.,* 2-3; Dkt.
11   26, *Rule Decl.*, 5-6. On January 12, 2018, the day his DOSA term of confinement expired,
12   Plaintiff was released as homeless to begin serving the 19-month community custody portion of
13   his DOSA sentence. Dkt. 26, *Rule Decl.*, 4-6; Dkt. 20, *Brumfield Decl.*, 25. According to DOC
14   records, Plaintiff was not released on his earned early release date because he did not have an
15   approved housing plan. Dkt. 19, *Bowen Decl.,* 3.

16   During the same time period, on September 19, 2017, non-party Offender Classification
17   Manager Joiann Miller recommended revoking Plaintiff's DOSA for willful failure to comply
18   with his DOSA conditions. Dkt. 24, *Miller Decl.,* 2, 4. Ms. Miller noted Plaintiff had not
19   completed chemical dependency treatment earlier in the year because he escaped from custody,
20   making him unavailable for treatment. Dkt. 24, *Miller Decl.*, 2. By the time Plaintiff returned to
21   DOC custody in September 2017, there was not enough time for him to complete substance
22   abuse treatment before the 19-month "confinement" segment of his DOSA expired. Dkt. 24,
23   *Miller Decl.*, 2, 4. Ms. Miller submitted the recommendation to her supervisor, John Campbell,
24

and Kevin Bowen, the Classification Manager in charge of Logistics. Dkt. 24, *Miller Decl.*, 4. Mr. Bowen agreed with Ms. Miller's recommendation, and he sent an email to the facility's records department, stating Plaintiff's release was on hold "pending adjudication for WAC violation 762." Dkt. 19, *Decl. of Kevin Bowen*, 2, 9; *See* Wash. Admin. Code § 137.25.030 (762) ("762 hearing" or "DOSA revocation hearing"). However, despite the recommendation, the DOSA revocation proceedings were not initiated at this time. Dkt. 27, *Young Decl.*, 11-15.[4] No DOSA revocation hearing was scheduled or held in 2017. Dkt. 19, *Bowen Decl.,* 2-3. There is no evidence in the record as to why the DOSA revocation proceedings were not initiated.

Later that year, after Plaintiff violated the terms of his community custody several times, his DOSA was revoked (which terminated his community custody), and he was returned to prison to serve the rest of his sentence. Dkt. 27, *Young Decl.*, 11-15. When he returned to prison, Plaintiff received credit for the time between his early release date in September 2017 and his actual release date in January 2018 (105 days) and for the good conduct time he earned on those 105 days (52 days). Dkt. 21, *Halvarson Decl.*, 2, 8. He was also credited with 192 days of successful community supervision he had earned before his DOSA was revoked. Dkt. 21, *Halvarson Decl.*, 2, 8, 10. Thus, once Plaintiff returned to DOC custody in November 2018, his sentence was reduced by 349 days. Dkt. 21, *Halvarson Decl.,* 2, 8. He was released from prison on June 14, 2019. Dkt. 27, *Young Decl.*, 10.

---

[4] Plaintiff's DOSA was revoked in late 2018, and he returned to prison to serve the remainder of his sentence. Dkt. 27, *Young Decl.,* at 10-11.

REPORT AND RECOMMENDATION - 7

**DISCUSSION**

In the Motion, Defendants contend Plaintiff fails to demonstrate a Fourteenth Amendment due process violation. Dkt. 18.

**I.     Fourteenth Amendment Claim**

Plaintiff alleges his Fourteenth Amendment due process rights were violated when Defendants failed to release Plaintiff on his earned early release date. *See* Dkt. 4. He contends his early release credits were revoked without a hearing. *Id*.

Pursuant to the Due Process Clause of the Fourteenth Amendment, "no state shall 'deprive any person of life, liberty, or property without due process of law.'" *Toussaint v. McCarthy*, 801 F.3d 1080, 1089 (9th Cir. 1986), *overruled on other grounds*, *Sandin v Conner*, 515 U.S. 472 (1995). The due process guarantees of the Fourteenth Amendment thus "apply only when a constitutionally protected liberty or property interest is at stake." *Tellis v. Godinez*, 5 F.3d 1314, 1316 (9th Cir. 1993). "There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1, 7 (1979); *see also Madsen v. Washington*, 2013 WL 1499145, *7 (W.D. Wash. March 13, 2013) ("prisoners have no constitutionally protected liberty interest in an early release"). State statues or regulations, however, may independently create a due process liberty interest. *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 461 (1989).

Under Washington law, inmates "may become eligible for supervised community custody in lieu of release." *Chaney v. Lehman*, 225 Fed.Appx. 708, 710 (9th Cir. 2007) (*citing* Wash. Rev. Code ("R.C.W.") § 9.94A.728(2) (2006)). Prior to release to community custody, an eligible inmate is required to "propose a release plan that includes an approved residence and

living arrangement." R.C.W. § 9.94A.729(5)(b). The Department of Corrections ("DOC") has statutory authority to deny transfer to community custody status if it "determines an offender's release plan ... may violate the conditions of the sentence or conditions of supervision, place the offender at risk to violate the conditions of the sentence, place the offender at risk to reoffend, or present a risk to victim safety or community safety." *Id*. at (5)(c). The statute further states "[t]he department's authority under this section is independent of any court-ordered condition of sentence or statutory provision regarding conditions for community custody or community placement[.]" *Id*. R.C.W. § 9.942A.7281 expressly states "offenders have no reason to conclude that the maximum percentage of earned release time is an entitlement or creates any liberty interest." Cases confirm the Washington state statute allowing early release to community custody does not create a liberty interest. *See Carver v. Lehman*, 558 F.3d 869, 873 (9th Cir. 2009); *Madsen*, 2013 WL 1499145 at *7-8; *In Re Mattson*, 166 Wash.2d 730, 739 (2009).

Plaintiff challenges the fact that he was not released on his earned early release date of September 29, 2017, but was held until his maximum expiration date, January 12, 2018 (the confinement portion of his DOSA sentence). Dkt. 21, *Halvarson Decl*., 2, 8. The undisputed evidence reflects Plaintiff did not have an approved residence, and therefore, he was denied release to community custody until his maximum release date of January 12, 2018. Dkt. 22, *Hostetler Decl.,* 4; Dkt. 26, *Decl. of Dianna Rule*, 5-6. There is no evidence demonstrating Defendants revoked Plaintiff's earned early release credits.

RCW § 9.94A.729(5)(c) gives the DOC discretion to approve or deny an early release plan based on the prisoner's proposed residence location:

> The department *may deny* transfer to community custody in lieu of earned release time if the department determines an offender's release plan, *including proposed residence location and living arrangements,* may violate the conditions of the sentence or conditions of supervision, place the offender at risk to violate the
REPORT AND RECOMMENDATION - 9

       conditions of the sentence, place the offender at risk to reoffend, or present a risk to victim safety or community safety.

RCW § 9.94A .729(5)(c) (emphasis added).

     As Plaintiff does not have liberty interest in early release to community custody, he has not overcome Defendants' summary judgment showing regarding his Fourteenth Amendment claim. *See Chaney*, 225 Fed. Appx. at 710 ("inmates have no clearly established right to a hearing prior to being released to community custody in lieu of earned release time"); *Dailey v. Washington*, 2012 WL 380272, *4 (W.D. Wash. Feb. 6, 2012) ("receipt of 'good time' credits only enables offenders . . . to timely propose a release address and plan for transfer to community custody"); *Foster v. Washington*, 2011 WL 1692971, *2-3 (W.D. Wash. July 11, 2011) (finding the plaintiff did not have a liberty interest in his "good time" and was not eligible for release because he did not provide a valid release address).[5]

     Plaintiff also argues Defendants failed to hold a DOSA revocation hearing. Dkt. 4. First, the undisputed record reflects in May 2017, a disciplinary hearing was held, and his work release was terminated, but he was not terminated from the DOSA program at that time. Dkt. 23, *Lauritzen Decl.*, 2, 11-12, 14-15, 17, 19.[6] Therefore, no hearing was necessary. With respect to the DOC's audit and recommendation to hold Plaintiff's release pending termination of his DOSA, the revocation proceedings were never initiated in 2017. Dkt. 27, *Young Decl.*, 11-15. It is not clear why the DOSA revocation proceedings were not initiated at that time, but in any event, this was beneficial to Plaintiff. Rather, as discussed above, Plaintiff was not released on

---

[5] Even if he had a liberty interest in his earned early release credits, he was given credit for that time when he returned to prison. *See Halvarson Decl.*, 2, 8.

[6] If Plaintiff had started treatment at that time, Defendant Lauritzen would have been required to initiate a DOSA revocation proceeding, including a 762 hearing. *See* Wash. Admin. Code § 137.25.030 (762). However, Plaintiff's revocation was discretionary and only his work release was terminated. *Id.*

REPORT AND RECOMMENDATION - 10

1 | his earned early release date because he did not have an approved housing plan. Dkt. 19, *Bowen*
2 | *Decl.*, at 2-3. Accordingly, because Plaintiff's DOSA was not revoked in 2017, a 762 hearing
3 | was not required, and Plaintiff's disciplinary process provided adequate due process. *See* Wash.
4 | Admin. Code § 137.25.030 (762).[7]

5 | Accordingly, the Court recommends the Motion be granted as to Plaintiff's Fourteenth
6 | Amendment claim.

### CONCLUSION

Based on the foregoing, the undersigned recommends Defendants' Motion for Summary Judgment be granted. Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on May 21, 2021, as noted in the caption.

Dated this 6th day of May, 2021.

/s/ David W. Christel
David W. Christel
United States Magistrate Judge

---

[7] The Court notes if Plaintiff's DOSA had been revoked, he would not have been eligible for release in January 2018 but would have been confined until approximately March 2019 (not accounting for any good time credits he may have earned during that period.). *See* Dkt. 19, *Bowen Decl.*, 2-3. This is reiterated by the fact that when Plaintiff's DOSA was finally revoked in late 2018, he returned to prison to serve the rest of his sentence and he was not released until June 2019. Dkt. 27, *Young Decl.*, 10-11. Plaintiff does not challenge these 2018 events in his Complaint. *See* Dkt. 4.